UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| International Association of Sheet Metal, Air, Rail, and Transportation Local Union No. 10 | File No. 18-cv-01960-ECT-LIB |
| Plaintiff and Counterclaim Defendant, | **OPINION AND ORDER** |
| v. | |
| A-1 Refrigeration of Hibbing, Inc., | |
| Defendant and Counterclaimant. | |

---

Justin D. Cummins, Cummins & Cummins, PLLP, Minneapolis, MN for Plaintiff and Counterclaim Defendant International Association of Sheet Metal, Air, Rail, and Transportation Local Union No. 10.

Joseph J. Roby and Susan L. Waldie, Johnson, Killen & Seiler, P.A., Duluth, MN for Defendant and Counterclaimant A-1 Refrigeration of Hibbing, Inc.

---

This case involves a dispute between a labor union, Local 10 of the International Association of Sheet Metal, Air, Rail, and Transportation Workers, and an employer, A-1 Refrigeration of Hibbing. The basic issue in the case is whether A-1 agreed to be bound by a collective-bargaining agreement in effect beginning in 2017 ("2017 CBA"). Local 10 says that A-1 agreed to be bound by the 2017 CBA and failed to contribute amounts required under the 2017 CBA to Local 10's fringe-benefit funds. In pursuit of this position, Local 10 filed a grievance under the 2017 CBA and obtained an arbitration award against A-1 for unpaid fringe-fund contributions in the amount of $140,481.65, all over A-1's

protest. Local 10 brought this case essentially to enforce that award. A-1 says it did not agree to be bound by the 2017 CBA and that, because the 2017 CBA is the source of the arbitration agreement, the dispute over fringe-fund contributions was not arbitrable and the award cannot be enforced. Local 10 and A-1 have filed cross-motions for summary judgment. Local 10 argues that there is no genuine issue of material fact that A-1 agreed to be bound by the 2017 CBA. A-1 argues the opposite—that there is no genuine issue of material fact that it did not agree to be bound by the 2017 CBA. Both motions will be denied because, under controlling Eighth Circuit law, the record evidence reasonably may be construed to find in favor of either Local 10 or A-1.

A few basic background facts are helpful to understanding the dispute. In December 2001, A-1 signed an agreement ("2001 Document") with Local 10 to abide by the then-in-force CBA negotiated by Local 10 and an employer association, the Sheet Metal, Air Conditioning & Roofing Contractors Association, Inc. ("SMARCA"). Answer & Am. Countercl. ¶ 5 [ECF No. 22 at 6]; McCauley Aff. Ex. 1 [ECF No. 63-1 at 2]. The 2001 Document states in full: "I hereby agree to abide by the labor agreement negotiated between Northern Minnesota Division of SMARCA of Minnesota, Inc., and Sheet Metal Workers' International Association, Local Union Number 10, effective May 1, 2001, with an expiration date of April 30, 2004." McCauley Aff. Ex. 1. Prior to the expiration of the 2001 CBA, Local 10 and SMARCA negotiated a new CBA with an expiration date of 2007. *Id.* Ex. 4 [ECF No. 63-1 at 45–74]. This process repeated itself every three years or so, with Local 10 and SMARCA negotiating new CBAs to replace expiring CBAs. *Id.* Exs. 5–9 [ECF Nos. 63-2, 63-3, 63-4]. The 2017 CBA negotiated by Local 10 and SMARCA

went into effect May 1, 2017 and is set to expire May 3, 2020. *Id.* Ex. 9 [ECF No. 63-4 at 2–38]. A-1 asserts, and Local 10 does not contest, that A-1 did not and has not signed any written agreement to abide by the terms of any of the CBAs after the 2001 CBA. A-1 Mem. in Opp'n at 4 [ECF No. 68].

A-1's position that it is not bound by the 2017 CBA has its roots in an alleged verbal contract with Local 10. A-1 asserts that this verbal contract was reached about the same time it signed the 2001 Document. A-1 Mem. in Supp. at 5–6 [ECF No. 54]. Specifically, A-1 alleges that it and Local 10 verbally agreed to the following: that one of A-1's co-owners, Ernest Aikey, would become a member of a different union, the Plumbers & Steamfitters Local 589; that A-1's other co-owner, Richard Lees, would become a member of Local 10; and that dues and fringe-benefit contributions would be paid for each co-owner to his respective union. *Id.* at 6. As part of this verbal contract, A-1 says it "thought it was necessary" for it to sign the 2001 Document agreeing to abide by the 2001 CBA. *Id.*

Local 10's claim to enforce the arbitration award arises under § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185. *See General Drivers, Warehousemen, and Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) ("[I]f the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301."); *see also Int'l Assoc. of Heat and Frost Insulators and Asbestos Workers, Local Union 34, AFL-CIO v. Gen. Pipe Covering, Inc.*, 792 F.2d 96, 98 (8th Cir. 1986) ("29 U.S.C. § 185 . . . authorizes federal courts to enforce arbitration awards."). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

3

submit." *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. "Federal labor law governs a CBA's validity, and we are not bound by technical rules of contract." *Miner v. Local 373*, 513 F.3d 854, 861 (8th Cir. 2008). Federal labor law has "well established that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound. All that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Twin City Pipe Trades Serv. Ass'n v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885 (8th Cir. 2014) (quotation omitted). "This inquiry is a question of fact . . . and focuses on the objective intent of the parties—not their subjective beliefs." *Miner*, 513 F.3d at 861 (internal citation omitted). To determine objective intent, the Eighth Circuit seems to examine the particular facts of each case without placing dispositive or added weight on any one factor. In *Miner*, for example, the court considered several categories of facts. These included such things as the existence and purpose of payments and their consistency (or inconsistency) with an asserted agreement, correspondence and other documents bearing on the existence of an agreement, deposition and affidavit testimony that an agreement did or did not exist, and the parties' arbitration conduct. *Id.* at 862.

Here, the record shows that a genuine issue of material fact exists as to whether A-1 objectively manifested an intent to be bound by the 2017 CBA. Some facts show an intent to be bound. For example, A-1 made some monthly fringe-benefit payments and

4

dues contributions to Local 10 on behalf of multiple employees. Rule 30(b)(6) Depo. of A-1 Representative Richard Lees ("A-1 Depo.") at 18–20 [ECF No. 72-1 at 35–37]; 2017 CBA Art. VIII [ECF No. 63-4 at 10–13]; 2017 CBA Art. XVI–XXI [ECF No. 63-4 at 20–27]. The amount and timing of these payments and contributions were consistent with the wage schedules distributed by SMARCA. A-1 Depo at 18–20. The hourly wages paid to employees other than owner-members Aikey and Lees were consistent with the wage schedule distributed by SMARCA. *Id.* at 20. Lees sought and received health care benefits established by the CBA. *Id.* at 23; 2017 CBA Arts. VIII, XVII. A-1 submitted hours reports to SMARCA or the Local 10 fringe funds. A-1 Depo. at 32. A-1 submitted to audits performed under the authority of the CBA. *Id.* at 36–37. A-1 provided data as a company bound by the 2017 CBA for purposes of the funds' tax filings. *Id.* at 63–73. A-1 used Local 10's hiring hall to hire additional employees to do CBA-covered work. *Id.* at 140; 2017 CBA Art. IV. Additionally, although not explicitly in compliance with the CBA, A-1 received monthly lists of companies bound by the 2017 CBA and their respective total hours reported under the 2017 CBA. A-1 Depo at 34–36. A-1 did not object to being included on these lists, nor did A-1 tell Local 10 to remove it from the list, or that A-1 was not required under the 2017 CBA to report those hours. *Id.* And A-1 paid a monthly industry-fund fee to support SMARCA, though A-1 was not a member of SMARCA and did not authorize SMARCA to negotiate with Local 10 on its behalf. *See* Local 10 Mem. in Supp. at 3–4 [ECF No. 58].

Other facts show that A-1 did not intend to be bound by the 2017 CBA. A-1 did not sign the 2017 CBA. It did not sign anything assenting to the 2017 CBA (as it did with the

5

2001 CBA). A-1 neither joined SMARCA nor authorized SMARCA to bargain for it, and it never sat at the bargaining table with Local 10. A-1 Mem. in Opp'n at 4. A-1 did not make fringe-benefit payments on behalf of Aikey, and Local 10 did not object to the sufficiency of the payments A-1 made on Aikey's behalf until mid-2016, when Local 10's affiliated fund, the Sheet Metal Local No. 10 Control Board Trust Fund (the "Fund"), audited A-1 and preliminarily assessed fringe-benefit contributions allegedly owed on behalf of Aikey for 2012 through 2014. Am. Countercl. ¶¶ 15–16. A-1 objected to the assessment, citing the verbal agreement, and the Fund did not pursue the assessment. *Id*. ¶ 16. Though A-1 used Local 10's hiring hall, that last occurred in 2009.[1]

Local 10 relies primarily on *O'Laughlin* and *Miner* to argue that the facts favoring its position are dispositive. These cases do not warrant the entry of summary judgment here for Local 10. Neither case establishes a rule making any particular fact cited by Local 10 controlling. It is true that *O'Laughlin* reached a result favorable to the union's fringe-benefit funds, but the relationship between Local 10 and A-1 here seems meaningfully different from that of the parties in that case. In *O'Laughlin*, there was no dispute that the parties had executed a valid CBA, signed by the defendant–employer. *O'Laughlin*, 759 F.3d at 882. The Eighth Circuit reversed the district court's entry of summary judgment in

---

[1] A-1 relies on some facts that seem unhelpful. For example, A-1 asserts that its payment of dues on Aikey's behalf to a different union is inconsistent with the 2017 CBA. A-1 Mem. in Opp'n at 12. But A-1 has not explained why this is so. No term of the 2017 CBA has been identified that prohibits an employer from paying dues to multiple unions. If A-1's argument on this point goes to the existence of the purported verbal contract, A-1 has made clear that it seeks neither enforcement of the verbal contract nor a finding that the contract existed.

favor of the employer, finding that as a matter of law the defendant–employer had failed to "express an unequivocal intent to terminate participation in the CBA." *Id.* at 886. Here, the issue is whether A-1 objectively manifested an intent to be bound by the 2017 CBA, not whether it expressed its intent not to be bound (or to be bound) "unequivocally." Similarly, in *Miner*, the court confronted "whether the conduct of the Locals manifested an objective intent to terminate" an addendum to an admittedly valid, signed CBA. *Miner*, 513 F.3d at 861. *Miner* reversed the district court's entry of summary judgment in favor of the defendant-union, holding that several fact issues existed regarding whether the union had agreed to be bound by the addendum. *Id.* at 862–63. Regardless, the Eighth Circuit is clear in both cases that "the crucial inquiry in determining the validity of a CBA is whether there is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Id.* at 861 (internal quotations omitted); *O'Laughlin*, 759 F.3d at 885. Summary judgment is therefore not appropriate because a genuine dispute exists as to whether A-1 manifested an objective intent to be bound by the 2017 CBA.

A-1 alternatively seeks partial summary judgment on the question whether it may present evidence of the verbal contract at trial. As A-1 explains, it hopes "to show the Court why A-1 conducted business the way it did over the years while the Successor CBAs came and went in the background; and why A-1 paid little if any attention to those Successor CBAs." A-1 Mem. in Supp. at 11. This motion will be denied because its aim— an order permitting the presentation of evidence—is not the appropriate subject of a summary-judgment motion. Regardless, in the context of how A-1 hopes to use it, the verbal contract seems immaterial to whether A-1's conduct bound it to the 2017 CBA.

Here, "the crucial inquiry in determining the validity of a CBA is whether there is conduct manifesting an intention to abide and be bound by the terms of an agreement. This inquiry is a question of fact, and focuses on the *objective intent* of the parties—*not their subjective beliefs*." *Miner*, 513 F.3d at 861 (emphasis added) (internal citations and quotations omitted). A-1 says it hopes to use the verbal contract to show "*why* A-1 conducted business the way it did," A-1 Mem. in Supp. at 11 (emphasis added), and that goes to A-1's subjective intent.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff and Counterclaim Defendant's motion for summary judgment [ECF No. 55] is **DENIED**;

2. Defendant and Counterclaimant's motion for summary judgment and alternative motion for partial summary judgment [ECF No. 52] is **DENIED.**

Dated: September 17, 2019             s/ Eric C. Tostrud
                                                                               Eric C. Tostrud
                                                                              United States District Court